UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> METZ FAMILY ENTERPRISES, LLC and WESTWOODS AVIATION II, INC. <br><br> Defendants. | C.A. No. _____ |

## VERIFIED COMPLAINT FOR REPOSSESSION OF AIRCRAFT

### INTRODUCTION

Plaintiff General Electric Capital Corporation ("GE Capital"), by and through its undersigned attorneys, hereby complains against defendants Metz Family Enterprises, LLC ("Metz") and Westwoods Aviation II, Inc. ("Westwoods") (Metz and Westwoods are hereinafter collectively referred to as "Defendants") to recover possession of an aircraft wrongfully retained by Defendants.

In or around July 2006, GE Capital financed the Defendants' purchase of a ten passenger, dual engine aircraft in the amount of approximately $1.6 million dollars. In March 2011, however, Defendants stopped making payment on the ten (10) year loan, which constitutes a default under the terms of the notes and security agreements executed by Defendants in connection with the purchase of the aircraft. On or about May 10, 2011, GE Capital commenced an action in Connecticut Superior Court seeking monetary relief based upon Defendants' failure to repay the loan. The aircraft, however, is presently located at an aviation facility in Westfield, Massachusetts.

Through this ancillary action, GE Capital seeks pre-judgment repossession of the aircraft in aid of the pending Connecticut state court action, pursuant to GE Capital's repossession rights under: (1) an international treaty known as the Convention on International Interests in Mobile Equipment ("Cape Town Convention") and the Protocol to the Cape Town Convention on Matters Specific to Aircraft Equipment (the "Protocol"); (2) GE Capital's Promissory Note and Security Agreement with Metz and a related Promissory Aircraft Security Agreement entered into by Metz and Westwoods; (3) the Uniform Commercial Code as enacted under M.G.L. c.106 §9-609; and (4) a Massachusetts state law replevin remedy made available through Fed. R. Civ. P. 64.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 because GE Capital's claims arise, in part, under the Cape Town Convention and Protocol, an international treaty to which the United States is a signatory.[1] Furthermore, to the extent necessary to afford GE Capital pre-judgment relief, the Court may exercise supplemental jurisdiction over and determine the state law claims raised in this action pursuant to 28 U.S.C. §1441(c).

2. This Court is the proper venue for this action because the aircraft at issue is located in Westfield, Massachusetts.

## PARTIES

3. Plaintiff GE Capital is a Delaware corporation having a place of business at 44 Old Ridgebury Road, Danbury, Connecticut, 06810.

---

[1] Pursuant to 28 U.S.C. §1331, "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4.  Upon information and belief, Metz is a New York limited liability company and has an office located at 25 Mitchelltown Road, Sharon, Connecticut, 06069.

5.  Upon information and belief, Westwoods is a Delaware corporation and also has an office located at 25 Mitchelltown Road, Sharon, Connecticut, 06069.

## FACTS

### GE Capital Agreed to Finance Metz's Purchase of the Aircraft

6.  On or about July 27, 2006, the Defendants purchased an aircraft made by Israel Aircraft Industries; Model No. Westwind II 1124A; Serial No. 2348 (the "Aircraft"). GE agreed to finance Defendants' purchase of the Aircraft by loaning Metz One Million Six Hundred Thousand and 00/100 Dollars ($1,600,000.00).

### Westwoods and Metz Family Executed
### Promissory Notes in Connection with the GE Capital Loan

7.  In connection with the purchase of the Aircraft and loan from GE Capital, Metz, as Maker, executed a Promissory Note dated July 27, 2006 (the "Promissory Note"), in which Metz promised "to pay to the order of [GE Capital] . . . the principal sum of . . . $1,600,000.00, with interest on the unpaid principal balance . . . at a fixed, simple interest rate of Seven and 39/100 percent (7.39%) per annum . . . ." A true and accurate copy of the Promissory Note is attached hereto as Exhibit A.

8.  Through a Promissory Note also dated July 27, 2006 (the "Westwoods Promissory Note"), Westwoods, as Maker, promised "to pay to the order of [Metz] or any subsequent holder thereof . . . the principal sum of . . . $1,600,000.00, with interest" at the same (7.39%) annual rate provided under the Promissory Note. A true and accurate copy of the Westwoods Promissory Note is attached hereto as Exhibit B.

### Westwoods and Metz Execute Security Agreements
### Granting GE Capital a Security Interest in the Aircraft

9.      July 27, 2006, Westwoods, as debtor under the Westwoods Promissory Note, entered into a Security Agreement with Metz, as secured party, pursuant to which Metz obtained a security interest in the Aircraft (the "Aircraft Security Agreement"). A true and accurate copy of the Aircraft Security Agreement is attached hereto as Exhibit C.

10.     On July 27, 2006, Metz, as debtor under the Promissory Note, entered into a Security Agreement with GE Capital (the "Security Agreement"), as secured party, pursuant to which GE Capital obtained a security interest in all of Metz's right, title and interest in: (a) the Westwoods Promissory Note; (b) the Aircraft Security Agreement; and (c) the Aircraft. See Security Agreement ¶1 (Creation of Security Interest), attached hereto as Exhibit D. Under the Security Agreement, Metz also granted GE Capital an international interest in the Aircraft within the meaning of the Cape Town Convention and Protocol. See Security Agreement, ¶1.

11.     Westwoods is a wholly owned subsidiary of Metz. See Security Agreement, ¶2(o). Under both the Aircraft Security Agreement and the Security Agreement, Westwoods is the sole owner and has the exclusive right to possession of the Aircraft. See Aircraft Security Agreement, ¶3(h); Metz Family Security Agreement, ¶2(h).

12.     The Security Agreement provides that an Event of Default occurs if, among other things, Metz fails to pay GE Capital any amount due under the Promissory Note. See Security Agreement, ¶6(a). Upon the declaration of an Event of Default, the Security Agreement provides, *inter alia*, that GE Capital shall have all of the rights and remedies provided under the UCC, the Cape Town Convention, the FAA or any other

applicable law. *See* Security Agreement, ¶7(a). Specifically, among other remedies, **GE Capital may take immediate and exclusive possession of the Aircraft wherever it may be found and exercise any rights GE Capital has under applicable law to "procure export and physical transfer of the Aircraft from the territory in which it is situated . . ."** *See* Security Agreement, ¶¶(b)(iii)-(iv), (x). (Emphasis added).

13. Under the Aircraft Security Agreement, an Event of Default occurs if Metz is in default of its obligations to GE Capital under the Security Agreement and/or Promissory Note. *See* Aircraft Security Agreement, ¶8(n). Upon the occurrence of an Event of Default under the Aircraft Security Agreement, Metz can exercise all of the remedies afforded GE Capital under the Security Agreement, including taking immediate and exclusive possession of the Aircraft wherever it may be found and exercising any rights Metz has under applicable law to "procure export and physical transfer of the Aircraft from the territory in which it is situated . . ." *See* Aircraft Security Agreement, ¶¶9(b)(iii)-(iv), (x).

14. Additionally, the Security Agreement and Promissory Note provide that GE Capital has the right:

> to apply to a court of competent jurisdiction in the United States . . . for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement, **including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against the Debtor, any Guarantor or the Collateral or to gain possession of the Collateral.**

*See* Security Agreement, ¶8(j), Promissory Note, p. 3 (Emphasis added).

## The Cape Town Convention And Protocol Provide
## For Prejudgment Remedies to Repossess Aircraft

15.     On July 21, 2004, the Senate of the 108th Congress ratified the Cape Town Convention and Protocol. *See* Treaty No. 108-10, summary available at http://thomas.loc.gov/cgi-bin/ntquery/D?trtys:1:./temp/~trtysnZJxhd. The Protocol became effective on March 1, 2006 after it was ratified by the requisite eight (8) countries. *See* Export-Import Bank of the United States press release dated February 28, 2006, available at http://www.exim.gov/pressrelease_print.cfm/B635813C-EED9-A037-6F8C0E8D07DFAEB6/; Protocol, Article XXVIII. True and accurate copies of the Convention and Protocol are attached hereto as Exhibits E and F respectively.

16.     The Convention provides that upon a debtor's default under the terms of a security agreement, a creditor may take possession or control of an object. *See* Convention, Article 8(1)(a); Article 1(i), (j) (Definitions), Article 11 (Meaning of Default). In addition to these and any other remedies provided by law or agreement of the parties, the creditor may procure the de-registration of the aircraft and/or the export and physical transfer of the aircraft from the territory in which it is located. *See* Convention Article 12, Protocol, Article IX(1).

17.     The Convention also provides for pre-judgment remedies. Specifically, under the Convention, a creditor who demonstrates a debtor's default "**may, pending final determination of its claim and to the extent that at any time so agreed, obtain from a court speedy relief in the form of : . . . possession, control or custody of the object . . .**" *See* Convention, Article 13(1)(b) (Relief Pending Final Determination). (Emphasis added). Article 14 of the Convention provides that a creditor shall exercise its right to a pre-judgment remedy "in conformity with the procedure prescribed by the law

of the place where the remedy is to be exercised."

18. Article 43(a) of the Convention further provides that:

> . . . the courts of the Contracting State on the territory of which the object is situated have jurisdiction to grant relief under Article 13(1)(a), (b) . . . .

Thus, under the Convention and Protocol, this Court has the jurisdiction and power to grant pre-judgment relief in accordance with applicable Federal and Massachusetts procedural remedies.

### Federal and State Law Provide the Procedural and Substantive Pre-Judgment Mechanism Necessary for GE Capital to Recover the Aircraft

19. Federal Rule of Procedure 64 provides that:

> a) Remedies Under State Law — In General.
>
> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. . .
>
> (b) Specific Kinds of Remedies.
>
> The remedies available under this rule include the following — however designated and regardless of whether state procedure requires an independent action:
>
> arrest; attachment; garnishment; replevin; sequestration; and other corresponding or equivalent remedies.

20. Article 9 of the Uniform Commercial Code, as enacted under M.G.L. c.106 §9-609, provides GE Capital with a judicial (and non-judicial) remedy for repossession of collateral under a security agreement as follows:

> After default, a secured party:
>
> (1) may take possession of the collateral; and . . .
>
> (b) Judicial and nonjudicial process. A secured party may proceed under subsection (a):
>
> (1) pursuant to judicial process; . . .

7

21. Additionally, M.G.L. c.214, §3 provides a statutory cause of action for replevin, i.e. recovery of goods wrongfully held over or detained. Massachusetts Rule of Civil Procedure 65.2 also provides for the issuance of an *ex parte* order of replevin. Accordingly, this Court has the power to issue an Order of replevin enabling GE Capital to repossess and recover the Aircraft.

### The Defendants and GE Capital Entered Into a Modification Agreement

22. On January 21, 2009, Metz, Westwoods and GE Capital executed a Modification Agreement that modified the loan payment schedule in the Promissory Note. A true and accurate copy of the Modification Agreement is attached hereto as Exhibit G. Specifically, pursuant to the Agreement, as modified by the Modification Agreement, commencing January 1, 2009, Metz was required to pay six consecutive monthly installments of eight thousand one hundred fifty-six and 40/100 dollars ($8,156.40), followed by eighty-six (86) consecutive monthly installments of principal and interest payments of nineteen thousand eight hundred eighty-three and 36/100 dollars ($19,883.36) commencing on July 1, 2009 (the "Installment Payments"), followed by a single, final installment, which was to be in the amount of the total outstanding principal and interest.

23. Under the terms of the Modification Agreement, Defendants also acknowledged their obligations to GE Capital under the terms of the Promissory Note, Westwood Promissory Note, Security Agreement and Aircraft Security Agreement. *See generally* Modification Agreement.

### Defendants Are in Default of the Agreements

24. Metz has breached its obligations under the note, including, but not limited to, a failure to pay Installment Payments due in March 2011 and April 2011.

25. By letter dated March 29, 2011, GE Capital issued notice to Metz that it was in default. GE Capital demanded that the past due Installment Payments be made no later than 12:00 p.m. EST on April 8, 2011. A true and accurate copy of the March 29, 2011 Notice is attached hereto as Exhibit H. Metz failed to cure the default identified in the Notice.

26. By letter dated April 13, 2011, GE Capital provided Metz notice that, as a result of Metz's default, GE Capital was exercising its rights under the Promissory Note, Security Agreement, Aircraft Security Agreement and any modification thereto, including, but not limited to, GE Capital's right to take possession of the Aircraft. A true and accurate copy of the April 13, 2011 Letter is attached hereto as Exhibit I. GE Capital demanded that payment of the outstanding amount due under the Promissory Note, approximately $1.165 million dollars, be made no later than 12:00 p.m. EST on April 25, 2011. Notwithstanding this demand, Metz failed to pay the outstanding amount due.

27. In an effort to collect the outstanding amount due it under the Promissory Note, on May 10, 2011, GE Capital commenced an action against Metz (among others) seeking money damages in the Superior Court of Litchfield, Connecticut that is entitled *General Electric Capital Corporation v. Metz Family Enterprises*, LLC *et al.* and is returnable to the Superior Court for the Judicial District of Litchfield, Connecticut on May 26, 2011 ("State Court Action"). A true and accurate copy of the State Court Action Complaint (without exhibits) is attached hereto as Exhibit J.

28. On or about April 29, 2011, GE Capital sent a letter to the Defendants requesting that they voluntarily turn over the Aircraft to GE Capital's representatives in

Westfield, Massachusetts, where the Aircraft is located. A true and accurate copy of GE Capital's turnover request is attached hereto as <u>Exhibit K</u>.

29. Although Defendants initially responded to the Aril 29, 2011 turnover request, thus far Defendants have refused to turn over the Aircraft and otherwise have refused to respond to GE Capital's communications concerning the requested turnover.

30. As of the time of the filing of this Verified Complaint, Defendants owe approximately $1.165 million dollars to GE Capital and have not given GE Capital back the Aircraft despite its repeated demands.

## <u>COUNT I</u>
### (Pre-Judgment Repossession Under the Convention and Protocol)

31. GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

32. The Defendants' failure to pay GE Capital the Installment Payments due under the terms of the Promissory Note, as modified by the Modification Agreement, constitutes a default under the Promissory Note, Security Agreement and Aircraft Security Agreement.

33. The Convention and Protocol expressly provide that GE Capital may, upon showing that a debtor is in default of its obligations under a credit agreement, initiate a legal proceeding and take possession of the Aircraft pending a final determination of the merits of the creditor's claims.

34. The State Court Action is pending and will determine the amount owed GE Capital in connection with the aforementioned default.

35. During the pendency of the State Court Action, GE Capital is entitled to exercise its pre-judgment right under the Convention and Protocol to repossess the Aircraft in accordance with applicable Federal and Massachusetts law.

36. It is proper for this Court to authorize such a remedy because the Aircraft is located in Massachusetts.

## COUNT II
**(Pre-Judgment Repossession Under the Security Agreement)**

37. GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

38. The Security Agreement expressly provides that GE Capital may, upon declaration that Metz is in default of its obligations under the Security Agreement, exercise its rights under the UCC, the Convention, and the FAA, and may take immediate and exclusive possession of the aircraft wherever it may be found.

## COUNT III
**(Pre-Judgment Repossession by Under M.G.L. c. 106 §9-609)**

39. GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

40. Article 9 of the Uniform Commercial Code as enacted under M.G.L. c.106 §9-609 provides that GE Capital may, upon Defendants' default of their obligations under the Security Agreement and Aircraft Security Agreement, take possession of the Aircraft through judicial process.

41. Given that Defendants are in default of their obligations under the Security Agreement and Aircraft Security Agreement, GE Capital is entitled to take possession of the Aircraft via an Order from this Court.

## COUNT IV
### (Pre-Judgment Repossession by Replevin Under Fed. R. Civ. P. 64 and M.G.L. c. 214 §3)

42. GE Capital repeats and realleges the preceding paragraphs as if fully set forth herein.

43. Pursuant to Fed. R. Civ. P. 64, "[a]t the commencement of and throughout an action," the remedy of replevin is available for GE Capital to recover the Aircraft.

44. Massachusetts General Laws c. 214, §3(a) provides a remedy "to compel the redelivery of goods or chattels taken or detained from the owner."

45. GE Capital is entitled to a replevin remedy because the Aircraft is being wrongfully detained by Defendants.

## REQUEST FOR RELIEF

WHEREFORE, GE Capital respectfully requests that the Court issue:

(1) a Temporary Restraining Order, in the form attached hereto as Exhibit L, enjoining and restraining Defendants from moving, alienating, transferring, pledging, encumbering or hypothecating the Aircraft until further order of this Court;

(2) an Order in the form attached hereto as Exhibit M:

    (a) permitting GE Capital and/or its agent Canal Air to take possession, operational control and custody of the Aircraft;

    (b) permitting GE Capital and/or its agent Canal Air to procure the export and physical transfer of the Aircraft from Westfield, Massachusetts to a facility under the custody and control of GE Capital, its officers, agents, servants, employees, and/or attorneys;

    (c) enjoining the Defendants, their officers, agents, servants, employees, and attorneys; and all other persons who are in active

        concert or participation with the Defendants and/or the aforementioned persons from impeding, obstructing, interfering or hindering the efforts of GE Capital to take possession of the Aircraft and procure the export and physical transfer of the Aircraft from Westfield, Massachusetts;

(d)   directing Defendants to register, or cause their agent to register, as a "transacting user entity" with the International Registry established under the Cape Town Convention, if not already so registered; and

(e)   appointing Daugherty, Fowler, Peregrin, Haught and Jenson as Defendants' "professional user entity" for purposes of registering a Contract of Sale (as such term is defined in the Cape Town Convention) in favor of General Electric Capital Corporation or its designee with respect to the Aircraft; and

(3) such other and further relief as the Court deems proper.

                              GENERAL ELECTRIC CAPITAL CORPORATION,

                              By its attorneys

                              /s/ Peter Antonelli
                              Thomas H. Curran, BBO #550759
                              tcurran@mccarter.com
                              Peter Antonelli (BBO# 661526)
                              pantonelli@mccarter.com
                              McCarter & English, LLP
                              265 Franklin Street
                              Boston, MA  02110-3113
                              Telephone: (617) 449-6500
                              Facsimile: (617) 607-9200

May 13, 2011

## VERIFICATION

I, Beth I. Bonell, as Vice President of General Electric Capital Corporation, hereby certify under the pains and penalties of perjury that I have reviewed the foregoing Verified Complaint and that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

By: *[signature: Beth I. Bonell]*

Dated: May 12, 2011